## DOWAGIAC MFG. CO. v. BRENNAN et al.

(Circuit Court, W. D. Kentucky. September 13, 1902.)

1. PATENTS—INVENTION.
   The mere bringing about of pressure by the use of a spring in any form is not patentable at this late day, and it is only some mechanical device for applying such pressure in a new and useful way that can be the subject of a patent.

2. SAME—INFRINGEMENT—GRAIN DRILLS.
   The Hoyt patent, No. 446,230, for an improvement in grain drills, conceding its validity, is for a combination of old elements, and is not infringed by a device made in accordance with the Christman & Munn patent, No. 497,864, which produces the same result, but by a combination of different elements.

In Equity. Suit for infringement of letters patent No. 446,230, for a grain drill, granted to Will F. Hoyt February 10, 1891. On final hearing.

Fred. L. Chappell, for complainant.

Staley & Bowman, A. E. Willson, and John R. Bennett, for defendants.

EVANS, District Judge.    On February 10, 1891, letters patent No. 446,230 were issued to W. F. Hoyt for "certain new and useful improvements in grain drills," of which he subsequently made an assignment to the complainant.    Two of the drawings accompanying his application and specifications are given, as they, in connection with what will be shown of the defendants' structure, will sufficiently illustrate the propositions upon which the court thinks the decision of the case must turn.    They are his Fig. 2, declared to be "a perspective view of a portion of the drill embodying my improved features," and his Fig. 4, which he states "is an enlarged perspective of the clamping plates detached, between which the spring pressure rods of the shoe and covering wheel are adapted to be secured."

*Fig. 2.*

*Fig. 4.*

The defendants manufacture a grain drill of which the following drawing will give a perspective view sufficient to illustrate the parts in their structure which are controverted:

Fig. 1.

This suit complains of the infringement of the three first claims of the patent, which claims are as follows:

"(1) In combination with the transporting wheels and frame, the hopper, shoe, and draft rods, the latter having a pivotal connection with the frame, the clamping plates having a pivotal connection with the draft rods, the spring metal pressure rods attached to said plates, said rods extending rearwardly of the hopper, the forked arm coupled to said rods, and means for raising and lowering said arm, substantially as specified. (2) In combination with a frame of a grain drill, the hopper having a flange at the upper end, the shoe attached to the hopper, the curved draft rods leading from the shoe and having a pivotal connection with the frame of the machine, a swinging head located between the upper ends of the draft rods, spring metal rods attached to the swinging head, said rods extending back of the hopper and below the flange thereof, said spring metal rods being coupled to an arm, said arm having means for raising and lowering it, and means for locking the parts, for the purposes set forth. (3) In combination with the frame, hopper, shoe, and draft rods, the plates pivotally attached between the upper portions of said draft rods, said plates having the horizontal shoulders, said shoulders bearing upon the draft rods, the spring metal rods attached to said plates and passing rearward of and on opposite faces of the hopper, and means for applying pressure to the rear ends of said spring metal rods, for the purpose specified."

The very able arguments, both at the bar and in the briefs filed, took a wide range, but it is deemed unnecessary for the court to no-

118 F.—10

tice in much detail any of the various points raised. It will only outline its views upon what appear to be the controlling questions.

If the case of McSherry Mfg. Co. v. Dowagiac Mfg. Co., 41 C. C. A. 627, 101 Fed. 716, decided by the circuit court of appeals of this circuit, had involved the same issues as this case does, it is obvious that the ruling in that case should be followed. That court, in its opinion, delivered through Judge Lurton, explicitly states two propositions, viz.: First, that the validity of the complainant's patent was conceded; and, second, that no question was involved on the appeal except that of infringement. So that in the case heard by the circuit court of appeals the defendant was held to have infringed a patent the validity of which it did not contest. In the case now to be determined the validity of the patent is assailed quite as vigorously as the charge of infringement is denied. Upon the first question, therefore, the opinion in the McSherry Case affords no aid, and, as the structure of the defendants in this case is also supported by a patent, and such presumptions as result from its issuance (Illinois Steel Co. v. Kilmer Mfg. Co. [C. C.] 70 Fed. 1012, and Powell v. Mills Co. [C. C.] 103 Fed. 476), and is quite different from that involved in the McSherry litigation, the opinion referred to is only partially instructive or authoritative. To establish the truth of the allegation of infringement, the burden is, of course, upon the complainant. Rob. Pat. § 1041; Walk. Pat. § 532. And, as the complainant's patent is for a combination of old elements, the opinion of the supreme court in Prouty v. Ruggles, 16 Pet. 336, 10 L. Ed. 985, is very cogent in its force and application in this connection as well as others. Has that burden been met and sustained by the complainant? is the first question to be disposed of. Having given the testimony the most attentive consideration, it seems to the court that the weight of it is in favor of the defendants on the issue of infringement. The expert testimony alone, to say nothing of the other evidence, would seem quite clearly to demand this conclusion. The preponderance of testimony on that issue, to say the least, is not on the side of the complainant. Equiponderance would not serve the complainant. Indeed, the conclusion would seem well-nigh inevitably to result from the evidence that the same combination of old elements which may be covered by the Hoyt patent, and which is claimed to have been new, is not to be found in the defendants' structure, either actually, or, as the preponderance of the testimony seems to show, in substantial equivalents, and that such parts as are found in common in each machine and the combination thereof are either old, or else are better covered by the patent No. 497,864, granted to E. Christman and Wm. G. Munn, and under which the defendants claim the right to manufacture it. The facts, to be more particularly adverted to further along, that seven years elapsed without suit, although the competition in the market between the two machines was active and continuing, and that W. G. Munn showed his machine to Hoyt in 1893, who made no claim of infringement, although he at the same time did assert that the McSherry machine was such, when considered in connection with the other testimony, are circumstances favoring

this conclusion. The mere bringing about of pressure as the result of the application or use of a spring, whether by means of a weight, a coil, a lever, a rod or rods, or a flat bar, and whether by means of a fulcrum or fulcrum block or otherwise, cannot be new or patentable at this late day. Such a result, achieved by some kindred means, or by some adaptation of some form of spring, is probably as old as mechanics. It is only some new device or mechanism, or some new combination of old elements, by which this perfectly familiar result can be accomplished in some new and useful way, that can be the subject of a patent. Rights acquired under such a patent must, no doubt, be subject to the rules announced in cases like Pope Mfg. Co. v. Gormully & Jeffery Mfg. Co., 144 U. S. 260, 12 Sup. Ct. 643, 36 L. Ed. 426; Fay v. Cordesman, 109 U. S. 408, 3 Sup. Ct. 236, 27 L. Ed. 979; Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344; Boyd v. Janesville Hay-Tool Co., 158 U. S. 260, 15 Sup. Ct. 837, 39 L. Ed. 973; Boyden Power-Brake Co. v. Westinghouse, 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136; and Kelly v. Clow, 32 C. C. A. 205, 89 Fed. 297,—and whether one mechanical device or combination, when viewed in connection with the prior art, is to be held and treated as the equivalent of another, may often be an extremely close, as well as important, question. It is so in this case, and the testimony of the mechanical experts on the subject is very elaborate and interesting. As has been indicated, it seems to the court that the weight of it is, if anything, with the defendants, rather than with the complainant, upon whom the burden rested. Certainly it may be greatly doubted whether all the elements of the combination claimed under the Hoyt patent are found in the defendants' machine. Complainant's counsel only contends for the combination (admitting that all the elements are old), and, if an important one is wanting in defendants' machine, infringement would not be established. Prouty v. Ruggles, 16 Pet. 336, 10 L. Ed. 985.

In his brief, on page 37, the learned counsel for the complainant says, "This patent is a patent for a combination, and is not for the particular elements," and on page 72 he says, "The elements are old, and, whether they were or not, for the purpose of considering these combination claims, must be assumed to be old, because it is a combination that is claimed, and not elements." These statements doubtless correctly represent the case, and make the expert testimony, and what the court has noticed in reference to the burden of proof, all the more suggestive. The testimony, especially that of Mr. Pope, makes the language of the supreme court in the case last referred to, and found on page 341, 16 Pet., page 985, 10 L. Ed., most pertinent. The court there said:

"The patent is for a combination, and the improvement consists in arranging different portions of the plow, and combining them together in the manner stated in the specification, for the purpose of producing a certain effect. None of the parts referred to are new, and none are claimed as new; nor is any portion of the combination less than the whole claimed as new, or stated to produce any given result. The end in view is proposed to be accomplished by the union of all, arranged and combined together in the

manner described. And this combination, composed of all the parts mentioned in the specification, and arranged with reference to each other, and to other parts of the plow in the manner therein described, is stated to be the improvement, and is the thing patented. The use of any two of these parts only, or of two combined with a third, which is substantially different in form or in the manner of its arrangement and connection with the others, is therefore not the thing patented. It is not the same combination if it substantially differs from it in any of its parts. The jogging of the standard into the beam, and its extension backward from the bolt, are both treated by the plaintiffs as essential parts of their combination for the purpose of brace and draft. Consequently the use of either alone, by the defendants, would not be the same improvement, nor infringe the patent of the plaintiffs."

See, also, 4 Rose, Notes U. S. Reports, p. 177.

There is no doubt that all the elements of the alleged invention are old. This, indeed, is admitted, as we have seen, by complainant's counsel. The claim is that Hoyt made a new and useful combination of those old elements, and the circuit court of appeals, in the McSherry Case, where the issues were such as conceded the validity of the patent, and logically excluded much investigation of the question of anticipation, while finding that Hoyt was not at all a pioneer in this field of investigation, held that his new combination was meritorious and useful, and that he was entitled upon that account, on the case as then presented, to a reasonable range of equivalents. Whether that court would apply the doctrine quite so broadly if the different issues and the fuller evidence offered in this case were before it, in connection with the ruling in Rowell v. Lindsay, 113 U. S. 102, 103, 5 Sup. Ct. 507, 28 L. Ed. 906, might possibly be matter of some speculation; but it is for that court, and not for this, to make limitations upon its rulings. We are bound by it as it stands. This much, however, this court may say: If the Hoyt patent, though only covering a combination of old elements, is entitled to the benefit of the rule of equivalents, as stated by the circuit court of appeals, so, apparently, are some, at least, of the previous patents brought in evidence in this case; and, giving those patents the benefit of the rule, there would appear to have been previous inventions which quite as certainly anticipated Hoyt's alleged invention as the latter did, if at all, that of the defendants. It seems to the court that in all the essential respects wherein it can be fairly claimed that the defendants' patent and the structure thereunder have infringed the Hoyt patent the latter had probably been anticipated. And it may be remarked that even a paper patent may be anticipatory of other inventions, or may supply ideas for them, and thus, at least, subvert the claim of originality. Neither the parallel spring rods, the clamping plates, nor the swinging head, which are claimed to be new, in fact appear in defendants' structure, and certainly all of them do not so appear in combination. The combination which contains these elements belongs to the complainant, but is not used by the defendants.

It cannot be assumed that the opinion in the McSherry Case requires that the device of parallel spring metal rods held together at one end by clamping plates and given a pivotal connection with the frame of the structure by means of a swinging head attached thereto, should, under complainant's patent, give to it a monopoly of means

for fastening or holding in a stationary position one end of every form of flexible lever or spring, nor that it should supersede or exclude others from the right to use every form of fulcrum. The lever and the fulcrum have, of course, been in everyday use for centuries. Primarily, they are employed in combination to pry or lift or move things that have great weight, but the lever may have a secondary or reflex use or operation when flexible and comparatively weak, and may then exert power or pressure in some direction by its mere elasticity. In that form it is commonly called a spring. This character of operation is frequently found in grain drills, the power being then exerted downwards instead of upwards. A mechanical device by which this result is accomplished by means of a combination of old elements is shown in the complainant's patent wherein the combination contains, among other old elements, the clamping plates, the swinging head, and the parallel spring rods long enough to extend back behind the shoe, and to the point where the power is applied, and not requiring a fulcrum block in its operation. The exertion of pressure on the shoe in this combination is brought about by the application of power to one end of the long and flexible spring rods (the other end being fastened to the frame), and the elasticity of the rods is adequate for the purpose without a fulcrum block. This combination has been maintained as patentable by the courts.

The defendants' device is also a combination of old elements. Instead of the elaborate device of parallel rods bent and confined together at one end by clamping plates through which and a swinging head it is fastened to the frame, the defendants' contrivance has a flat bar, which, by means of a hole near one end of it, wherein works a pin which extends downwardly from a plate which connects the draft rods, and constituting a very simple, and probably very old, mechanism, is put in pivotal connection with the frame of the structure, though not fastened to it. The simple mechanism referred to probably required nothing inventive in its construction (in this important respect differing also from complainant's), and it certainly does not include in it either a swinging head or clamping plates. In operating this device, any mere elasticity of the flat bar is not the thing relied upon. Instead a fulcrum block is introduced into the combination, and we have more nearly an example of the lever and prop exerting power downwards. This device has been passed upon by the patent office, but not, so far, by the courts. Both of these combinations seem to operate well in accomplishing a desired result, but does the ruling in the McSherry Case demand that we shall hold that the combinations are the same merely because they achieve the same result? One does it in one way, and by one contrivance, wherein the elasticity of long metallic rods is utilized without a fulcrum block. The other does it in another way, and by a contrivance wherein a flat bar operates as a lever upon a fulcrum block, the fulcrum block being absolutely essential to the success of this combination. Without it the defendants' combination is impossible. Does not the presence of the fulcrum block in the defendants' structure, together with the absence of the swinging head and clamping plates, so far and so cer-

tainly distinguish it from the complainant's as to make defendants' combination a different one from the complainant's, and bring it within the doctrine of Prouty v. Ruggles? It seems to me that this is fairly a test question, which must be answered in the affirmative, inasmuch as the swinging head, the clamping plates, and the parallel metal spring rods pivotally connected to the frame and extending back to the rear of the boot are all, in the language of the opinion in that case, "treated by the patentee as essential parts of his combination." This conclusion appears to be strongly supported also by Eames v. Godfrey, 1 Wall. 79, 17 L. Ed. 547. Even if the clamping plates and swinging head found in the complainant's structure perform functions analogous to those of a fulcrum, that does not make them together or singly a fulcrum in fact, nor impart patentability to a mere function. 1 Wall. 80, 17 L. Ed. 547. Indeed, it is not claimed in either of the claims of the Hoyt patent that anything in the combination therein described is a fulcrum, or is intended to operate as such. For this reason, if no other, we may not fairly inject into this case of a combination of old elements the pretense of equivalency to something not claimed in the patent nor used in the structure of the complainant.

It should be observed also that the two combinations neither depend upon the same principle, nor have the same operation, and, although they achieve a common result, they reach it by different routes. In one the mechanical principle of elasticity is relied upon as the essential means of obtaining spring pressure. In the other the principle is that of the lever and fulcrum, pure and simple, and any elasticity in the mechanism is merely secondary and incidental. And not only are the principles thus different, but so, also, are the operations which respond to them. Other portions of these grain drills being alike, the machines as a whole closely resemble each other, but that general fact is not material. Our investigations in this case must be confined strictly to the questions relating to those three or four elements which bring about pressure upon the shoe in the manner claimed in the patent to be new, those elements being principally the spring rods, the clamping plates, and the swinging head.

As I construe the opinion in the McSherry Case it was only intended by the court, in passing upon the two machines then under consideration, to hold that the combination of old mechanical elements or devices whereby spring pressure was brought to bear upon the shoe of the drill by means of parallel metal spring rods extending back of the shoe, and having pivotal connection with the frame by means of clamping plates and a swinging head, or the fair mechanical equivalents thereof, in combination with other old elements, and substantially as described in the claims of the patent to Hoyt, was not a mere aggregation of old elements, but was a meritorious invention, covered by that patent, and to the benefits of which the complainant was entitled. Giving effect to those views, the court held that the McSherry structure was an infringement of the complainant's patent; but this court, yielding fully to the authority of that decision as far as applicable, has reached the conclusion upon the

evidence that in fact there has been no such infringement in this case, where there has been a different combination of some, but not all, of the same old elements. The court is of the opinion that the simple means (certainly not a swinging head nor clamping plates) adopted by the defendants for pivotally connecting the flat bar in their structure with the frame of the machine was open to them, notwithstanding the patent to Hoyt; that, notwithstanding that patent, they might still use a fulcrum block for a prop upon which the flat bar in their structure might rest and perform its work of applying pressure or force, and that the combination of devices used in their machine was not the equivalent of that described in the complainant's patent. See Rowell v. Lindsay, 113 U. S. 103, 5 Sup. Ct. 507, 28 L. Ed. 906. Both the flat bar and the spring rods may alike be levers or springs, but it is not open at this late day to any one to acquire a monopoly in the mere use of a lever or spring for the exertion of pressure or force in any form. To determine otherwise would be to hold substantially that a right of monopoly of the mere production, per se, of spring pressure, could be conferred by letters patent, whereas only some new and useful mechanical contrivance to exert that pressure efficiently is entitled to that right, other necessary conditions existing. Both parties here claim such devices. As before indicated, if one combination of old elements is different in any substantial way from another combination, the two are not the same. In the opinion of the court, and for the reasons pointed out, the combination described and claimed in the Hoyt patent is substantially different from anything in defendants' structure, and the latter was, therefore, open to their adoption and use. Of course, the two structures, having so many old features in common, resemble each other, as all the later grain drills do; but, while the case is a close one, sometimes hovering along obscure lines, I have stated the matter in the way it has struck me after a great deal of reflection upon it.

As between the litigants in this action the improvements in grain drills embraced in the manufactures of each could probably, with justice to all parties and to the public, be respectively used by them without either infringing upon any lawful right of monopoly of the other. Both may be useful and meritorious, and, if so, there is room for both. It might be matter of regret if this or other litigation should destroy either.

It may be important to remark that the positive and practically undisputed testimony of W. G. Munn is to the effect that he exhibited the defendants' machine at the Chicago Exposition in 1893; that W. F. Hoyt was then in charge of the complainant's exhibit, which was near by; that Munn showed his machine to Hoyt, and talked it over fully with him; that they examined at the same time the McSherry machine, also on exhibition there; and that, while Hoyt emphatically denounced the latter as an infringement upon his patent, he made no such complaint or claim as to the defendants' machines. As to the defendants' machines no complaint was made either by Hoyt or by the complainant for quite seven years, nor until this suit was brought, in 1900, although in the meantime the two machines were

in the most active competition in the markets of the country to the knowledge of the complainant. From these facts, even if estoppel does not follow, it is certainly not unfair to draw the conclusion that both the complainant and the patentee, Hoyt, supposed during all that period that there was no infringement of their patent,—in this way somewhat supporting both the testimony to that effect of the defendants' expert, Mr. Pope, and whatever presumption arises from the granting of the patent without the suggestion, by the patent office, of any interference. These remarks apply to patent No. 497,864, issued to Christman & Munn May 23, 1893, and to the structures thereunder, and not to the earlier patent, No. 473,234, about which there was notice and correspondence with the complainant, which was conceded to infringe, and which was consequently abandoned by defendants. Meantime the McSherry Case progressed to judgment, and the pendency of that suit is urged as an excuse for not sooner bringing this action; but that suit, for several reasons already indicated, was not fairly a test suit. Possibly the general language used by the court in its opinion in that case might have encouraged some hope of success in other suits, but, while applicable and controlling in a similar case, it must be doubted, upon grounds already pointed out, whether it is applicable, except as to merely incidental questions, to the entirely different case now before us. At all events, the court, upon the proof, is of the opinion that the patent No. 446,230, issued to W. F. Hoyt, has not been infringed by the defendants, and that none of the infringements complained of in the bill are established by the testimony.

The question of infringement, however, is not the only important one in the case. It is true that the new combination covered by the claims of the complainant's patent must be held to have patentability. This is demanded by the McSherry Case, wherein that question of law was expressly so ruled. Whether there was invention in the Hoyt claim, as distinguished from mere mechanical skill, is a matter which seems also to be settled for this court by the decision in the McSherry Case. But the question of fact as to whether Hoyt was the discoverer of the combination described and claimed in his patent is open to investigation at the demand of the present defendants, who were not parties nor privies to the McSherry litigation. The solution of this question would require it to be ascertained whether Hoyt originally conceived the idea of the invention he patented; in other words, was he the "discoverer" of the combination he described? The testimony on the subject is conflicting, and any conclusion drawn from it might possibly admit of doubt. Certainly, in view of the disastrous consequences to the complainant if its patent be destroyed, the court would be most reluctant to hold the Hoyt patent void, unless it should become necessary to do so; and, as this court's judgment will most probably not be final, and can, I think, fairly and properly be put upon the ground of noninfringement, that necessity does not appear to have arisen. But the question is earnestly pressed, and while, in view of what has just been said, and in view also of the court's opinion that there has been no infringement

of the complainant's patent by the defendants, the court will not put its judgment upon any opinion it may have formed upon the issues raised by the amended answer of the defendants filed August 23, 1901, still it may not be amiss to note certain conclusions of fact to which the court's mind is very strongly inclined upon the testimony offered in support of that issue after giving it and the other evidence a very careful consideration. · If that testimony is not to be entirely disregarded, it appears that in the winter of 1889–90 one Gaylord W. Denyes conceived the idea which ultimately materialized in the Hoyt patent; and not only so, but that he informed Hoyt of that conception. Without the adjudication in the McSherry Case, and especially in view of the prior art and previous patents, it might be, as insisted by the defendants, that the conception would not seem to require much, if anything, beyond ordinary ingenuity on the part of a skilled mechanic. We know, however, that many of the greatest inventions astonish us by their simplicity, and what looks like obviousness, after somebody has embodied the device practically. Assuming, as this court must, that there was invention, and not mere mechanical skill, who was the inventor—the first "discoverer"—of the new thing? Denyes seems at least to have indicated every idea that was new in what was afterwards described in the Hoyt combination and patented by him. Denyes explains why he did not apply for a patent, and we are not at liberty to reject this evidence, whether we think a person of more agile mind and differently situated would have done otherwise or not. Denyes worked for the complainant as foreman in one of its shops. He appears to have made drawings of the improvements on grain drills which he had conceived, and, if his testimony is to be credited,—although it is denied by Hoyt,—he showed them to Hoyt in the winter previous to the spring of 1890. It may be true that both Denyes and Hoyt at the time attached little importance to them, but under business impulses the latter was afterwards, namely, in the spring of 1890, called from Dowagiac, his home, to the Northwest, and in that region, he says, he studied the situation, and the objections to the forms of grain drills then in use there. In April of that year, and while on the train, as he tells us, "between Sheldon and Fargo, the thing" afterwards embodied in his patented invention "took shape in his mind." The court is much inclined to think that, consciously or unconsciously, his memory went back, under these circumstances, to what Denyes had told him, and to what he was most probably shown by Denyes, and that the original idea of his device was, therefore, not his own, but that of Denyes. Whether Denyes got the idea from other patents is immaterial on this issue, and need not be considered. Upon the evidence the court is much inclined to the opinion that Hoyt, at all events, was not the original and first discoverer of the improvements in grain drills described and covered by the patent No. 446,230, mentioned in the bill of complaint. The evidence, in the court's opinion, conduces strongly to show that there was no inventive act on Hoyt's part which generated any new idea of a means to an end. If there was such an act or such an idea, it was most probably Denyes', and not Hoyt's. As

affecting the probabilities of this particular case it may be well to remember always that Denyes was a practical mechanic of many years' standing, while Hoyt was not. As appears from the latter's testimony, he was a clerk and bookkeeper only until some time in 1887, when, at the age of 31, he became secretary and superintendent of the complainant. How much this position led him or enabled him to study the mechanical arts before he went to the Northwest in April, 1890, does not appear.

It is the opinion of the court that none of the allegations of infringement set forth in the bill of complaint have been proved by the testimony offered in the case, and that no grounds for an injunction or for an accounting have been shown, and it results that the bill should be dismissed, with costs, and a decree to that effect may be prepared.